IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| COMPASS BANK, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | EP-11-CV-359-PRM |
| | § | |
| VEY FINANCE, LLC, | § | |
|     Defendant. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On this day, the Court considered the evidence and arguments presented during the bench trial, which it held in the above-captioned cause from March 26, 2012 to March 28, 2012. After careful consideration of the live testimony,[1] other admissible evidence, and arguments offered by each party, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).[2]

**I.   FINDINGS OF FACT**

    **A.   Background and Description of the Parties**

Plaintiff and Counter-Defendant Compass Bank (Compass) is an entity engaged in financial and banking services. It is an Alabama corporation and has its principal place of business in Birmingham, Alabama. In March of 2008, State National Bank (SNB), another financial services and banking entity, was merged into Compass.

Defendant and Counter-Plaintiff Vey Finance, LLC (Vey) is a Texas limited liability company, with its principal place of business in El Paso, Texas. Vey operated as a secondary-

---

[1] To promote judicial economy, the Court took judicial notice of the testimony presented during an injunction hearing and at a bench trial in a related case before the Court, *Compass Bank v. Carlos E. Veytia and Veronica L. Veytia*, EP-11-CV-228, ECF Nos. 151 (injunction), 201 (trial).

[2] Any finding of fact more properly characterized as a conclusion of law shall be adopted as such, and any conclusion of law more properly characterized as a finding of fact shall be adopted as such.

mortgage refinancing entity from 2003 until 2009. Vey would customarily borrow money from various banks and use that money to make mortgage loans at a higher interest rate to third-party borrowers, including individual homeowners and businesses. In May of 2011, Vey filed for Chapter 11 bankruptcy protection, which proceedings remain pending.[3]

Carlos E. Veytia and Veronica L. Veytia (collectively, the Veytias) are the managers, principals, and sole shareholders of Vey. During the relevant times at issue in this cause, they were actively involved in the day-to-day operations of Vey's business and were its sole decision makers. Carlos Veytia is a financial planner and broker who has been working in finance since 1989. While he has not obtained a college degree, he did attend Texas Tech University for three years. He currently holds professional certifications or licenses relevant to the financial services industry and offers his professional financial services to others. In sum, he has experience and training in the fields of finance and business; he is capable of negotiating loan agreements with banks and of understanding financial transactions into which he enters as principal of Vey. Veronica Veytia had primary responsibility for the accounting and bookkeeping at Vey; she is competent to perform her roles and is capable of understanding the accounting issues relating to the operation and financial transactions of Vey. On occasion, she worked with accountants and financial experts, such as during the preparation of documents relating to Vey's taxation.

B.  **The Loans at Issue**

During the course of its business operations, Vey opened various deposit accounts with SNB. From August of 2004 to January of 2008, Vey entered into a number of loan agreements with SNB through various promissory notes that the Veytias signed on behalf of Vey. Such

---

[3] The Court withdrew the bankruptcy reference only as to the adversary proceedings involving Compass and Vey; the bankruptcy court retains jurisdiction over all non-adversary matters. Order Granting Withdraw of Reference in Adversary Proceeding, Nov. 10, 2011, ECF No. 5.

promissory notes include loans referred to as the Manzano/Mesa Hills Loan, the Tierra Humeda Loan, the First Chapel Downs Loan, the Boling Loan, the Mayorga Loan, the Guidance Line Loan, and the Second Chapel Downs Loan. After the March 2008 merger of SNB into Compass, Vey entered into a loan agreement directly with Compass when the Veytias signed a promissory note in January of 2009, known as the Consolidated Loan. In total, Vey has entered into promissory notes for over $8 million in loans and lines of credit with SNB and Compass.

SNB and Compass each disbursed the loan proceeds into Vey's accounts and complied with the requirements of the promissory notes and agreements. Vey received a benefit from the use of such loan proceeds to operate its business and to cover debts. However, by the end of September 2009, Vey ceased making scheduled loan payments and became delinquent on all of the loans at issue. Compass's calculations of the outstanding loan balances on each promissory note are based, in part, on computer data taken from SNB at the time of the merger. The computer records underlying the debt calculations by Compass are reliable and accurate;[4] Vey offered no controverting evidence and failed to rebut evidence provided by Compass. Mike Lewis, a Senior Vice-President in Compass's Asset Recovery and Management Solutions Department, specializing in recovery of past-due loans, provided testimony and documents substantiating the outstanding loan balances. The Court finds his testimony and conclusions to be credible and accurate. As of the date of trial, the debt for each loan was:

---

[4] In the prior, related case, Lewis testified that Compass relies on its computer records to determine loan balances and to document loan transactions. Transcript at 49 Compass Bank v. Carlos E. Veytia and Veronica L. Veytia, EP-11-CV-228, ECF No. 201 (W.D. Tex. Jan. 23, 2012). He testified that the computer system was examined by internal and external auditors as well as bank regulators to ensure reliability. *Id.* He further testified that all of the loans at issue in this case and all of the transactions were examined by internal auditors to make sure that the computer system's records were, in fact, accurate. *Id.* at 50, 81. He was cross-examined as to the accuracy of the computer records, after which he stipulated that he did not personally audit each loan history from inception to the present. *Id.* at 132. Yet, he stated that he had confirmed the accuracy of the records with Compass's auditing department. *Id.* at 137.

| | |
|---|---|
| Manzano/Mesa Hills Loan | $361,449.73 |
| Tierra Humeda Loan | $77,097.20 |
| First Chapel Downs Loan | $443,471.87 |
| Boling Loan | $236,353.93 |
| Mayorga Loan | $205,353.15 |
| Guidance Line Loan | $1,013,740.12 |
| Second Chapel | $1,224,291.66 |
| Consolidated Loan | $5,005,551.39 |
| **Total Debt on Loans** | **$8,567,309.05** |

C.   **Vey's Assertions**

In 2007, the Veytias began to perceive activity in Vey's accounts that they considered to be anomalous. Thereafter, they contacted bank officials. Initially, the Veytias were satisfied with, and accepted, the explanations offered by SNB and Compass personnel. Vey continued to make payments on its loans and entered into several of the aforementioned promissory agreements subsequent to discovering the anomalies.

Presently, Vey blames David Peterson (Peterson), a former SNB and Compass employee, for unauthorized transfers out of Vey's accounts and for the misapplication of funds by failing to apply some of Vey's payments to certain loan balances. In August of 2008, Compass fired Peterson for misconduct at the bank. On July 23, 2010, federal authorities charged Peterson with four counts of bank fraud. Following Peterson's plea of guilty, a federal judge sentenced Peterson to fifty-one months' imprisonment. Prior to his termination, Peterson had access to Vey's accounts and the Veytias often came to him to conduct Vey's business. In fact, Peterson and Carlos Veytia had a friendly relationship dating back more than a dozen years. Vey now seeks to hold Compass responsible for actions Vey attributes to Peterson.

1.   **Unauthorized Transfers**

Many of the unauthorized transfers alleged by Vey were directed to the benefit of entities owned or controlled by Octavio Maese (Maese), including Ocho Finance, LLC (Ocho); OMC

4

Logistics, LP; and OMC Services (collectively, the Maese Entities).[5] Maese is a close friend of Carlos Veytia. Carlos Veytia and/or Vey held an ownership interest in Ocho. Additionally, Carlos Veytia personally guaranteed some of Ocho's debt. While Maese has been charged in federal court with bank-related fraud, the testimony provided did not explain the circumstances relating to the charges.

Vey has alleged that Peterson manipulated its accounts, which caused unauthorized transfers of funds out of those accounts, including unauthorized transfers to the Maese Entities[6] [hereinafter Disputed Transfers[7]]. Carlos Veytia denied that he and Vey received more than $20,000.00 from the Maese Entitites or that he was involved with OMC. However, the Court finds that Carlos Veytia and Vey received $381.421.40 from the Maese Entities. The Court finds that Carlos Veytia lacks credibility when testifying that the Disputed Transfers to the Maese Entities were unauthorized, denying involvement with OMC, and asserting that he and Vey were not compensated for the transfer of funds by the repayment of those funds or the receipt of some other benefit. Moreover, given Vey and Carlos Veytia's relationship with Maese and the Maese

---

[5] Octavio Maese and the Maese Entities were third-party defendants in predecessor cases to the present action, but the Court dismissed the claims against them for failure to state a claim. *Compass v. Veytia*, EP-11-CV-228-PRM, ECF No. 118 (W. D. Tex. July 1, 2011). Compass sought to hold Maese and the Maese Entities liable based on a theory of contribution and indemnity. *Id.* at 4. However, under Texas law, contribution and indemnity are not independent causes of action; they are derivative of a plaintiff's right to recover. *Id.* (citations omitted). Additionally, under Texas law, contribution does not apply in contract actions. *Id.* at 5. (citations omitted). Given that all of Compass's causes of action derived from alleged breaches of contractual duties, the Court determined that Compass did not have a cause of action against Maese and the Maese Entities.

[6] Vey also alleged that unauthorized transfers were directed to Brute Force Entertainment. However, the only evidence of such transfers came through uncorroborated and self-serving testimony. The Court finds that Vey has failed to prove any such transfers, much less that such transfers were unauthorized. Notably, Vey makes no mention of Brute Force Entertainment in its Proposed Findings of Fact and Conclusions of Law, ECF No. 197.

[7] *See* Ex. P-136 for a summary of the Disputed Transfers.

Entities, the Court finds that there is insufficient evidence for the Court to conclude that the transfers were actually not authorized.

Vey also offered the testimony of its expert forensic accountant, Jay Dunbar (Dunbar), to support its claim that the Disputed Transfers were unauthorized and to quantify an amount for the Disputed Transfers.[8] In reaching his conclusion that the Disputed Transfers were unauthorized, Dunbar's testimony relies upon Carlos Veytia's verbal assertions that the transactions were unauthorized, which the Court has found lacking in credibility. However, Dunbar also relied upon his own determination when opining that the transfers did not serve a business interest. Significantly, Dunbar's determinations as to the business interests were predicated on his understanding of the lack of, or minimal, business relationship between Vey/Carlos Veytia and the Maese Entities. Prior to being cross-examined, Dunbar was not aware[9] of a substantial number of checks and payments made and received in back-and-forth exchanges between Vey/Carlos Veytia and the Maese Entities.[10] Accordingly, Dunbar was uninformed of the business relationship between the entities, and consequently, he could not testify accurately as to the amount of the Disputed Transfers given that his calculations were made without the knowledge of a substantial number of transactions.[11] Therefore, the Court

---

[8] In addition to acting as Vey's expert in this case, Dunbar is also a relative, by marriage, to Carlos Veytia, performs Vey's tax work, and assisted Vey in the investigation of its claims.

[9] The Court credits Dunbar's testimony that he had not previously viewed the checks he was presented during cross-examination. However, the Court also concludes that Compass had previously provided these materials to Vey and that Vey could have maintained such records itself as it was either a beneficiary or author of the checks.

[10] One such back-and-forth transaction shows $180,000 transferred from Ocho to Vey followed, less than a month later, by a transfer from Vey to Ocho of $180,000.

[11] Dunbar revised his expert report to reflect one such transaction that he was apprised of prior to trial. However, a number of other transactions were brought to his attention during his cross-examination. He was unable to say definitively how those additional transactions would affect his calculation.

finds no support in Dunbar's testimony for Vey's assertion that certain transfers were unauthorized and cannot accept Dunbar's calculations as to the amount of the allegedly unauthorized transactions. Accordingly, the Court finds that Vey failed to demonstrate that any of the allegedly unauthorized transactions were, in fact, *not* authorized.

### 2. Misapplied Funds

Regarding several of the promissory notes at issue in this case, the underlying property used to collateralize the promissory note was sold. Under normal business circumstances, SNB should have applied the sale proceeds to pay off the loan that the property secured and thereafter cancel the specific debt. However, in several instances, SNB did not follow normal business practices. Instead, the funds from the sale of the property were deposited into Vey's accounts at SNB. In each case, Vey received an arguably unintended benefit from each of the sale proceeds in that the full amount of the funds was deposited into Vey's accounts.[12] Further, Vey continued to make regular loan payments on promissory notes secured by property even after the underlying property had been sold.

In contrast to earlier positions taken by Vey, Carlos Veytia stated at trial that he merely wished to have Vey's debt reduced by the amount of interest it paid on loans after collateral was sold. However, Vey failed to adduce any admissible evidence of the amount of interest it paid after collateral was sold. Similarly, Vey failed to adduce any evidence as to the amount of supervision that Compass should have exercised over Peterson, or over Vey's accounts more

---

[12] Carlos Veytia, Veronica Veytia, and Dunbar each testified that the allegedly misapplied funds from the sale of the secured properties were deposited into Vey's accounts. In fact, Dunbar amended his original expert report to clarify that, although he originally stated that Vey had been damaged by approximately $632,000 in misapplied funds, he later determined that Vey had the use of those funds and was not damaged by that amount. Notably, Compass elicited testimony that the resulting increase in Vey's account balances allowed for a higher borrowing capacity given required asset to debt ratios.

7

generally, to ensure that the proceeds from the sale of collateral were applied to satisfy the underlying promissory notes.

### 3. The Consolidated Loan

Vey makes several assertions that are unique to the Consolidated Loan, arguing that it entered into the Consolidated Loan under duress and as a result of Compass's fraudulent activities.[13] Vey also asserts that it had paid off several loans, the Eckols Loan in particular, but that the loans were improperly added into the Consolidated Loan. Accordingly, Vey argues that the balance allegedly owing to Compass under the terms of the Consolidated Loan should be reduced proportionately.

The Consolidated Loan was signed on January 22, 2009. At that time, Vey was represented by legal counsel and was in consultation with Dunbar, its accounting expert. Additionally, Compass had already fired Peterson, and Vey was aware of many of the alleged anomalies it now attributes to Peterson. Further, Vey thereafter entered into a loan modification agreement that was signed by the Veytias on May 19, 2009. The modification agreement extended the interest-only period on the Consolidated Loan. Thereafter, Vey added additional collateral to secure the Consolidated Loan, including the Eckols property on May 29, 2009.

## II. CONCLUSIONS OF LAW

The Court has subject matter jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332 (2006). Since the parties' claims are based in state law, the Court applies Texas substantive law when assessing the merits.

---

[13] Vey withdrew this claim during closing arguments by acknowledging the validity of the Consolidated Loan. The Court merely addresses it here out of an abundance of caution.

8

### A.   Compass Bank's Claims

Compass brings three claims: (1) breach of the promissory notes; (2) unjust enrichment; and (3) recovery of attorneys' fees. Third Am. Compl., Dec. 22, 2011, ECF No. 99.

#### 1.   Breach of Promissory Notes

In Texas, "to recover on a promissory note, the plaintiff must prove: (1) the note in question, (2) the party sued signed the note, (3) the plaintiff is the owner or holder of the note, and (4) a certain balance is due and owing on the note." *Manley v. Wachovia Small Bus. Capital*, 349 S.W.3d 233, 237 (Tex. App.—Dallas 2011, pet. denied). Vey only disputed the fourth element during trial.[14]

Vey disputes Compass's accounting of the loan balances in various ways, essentially arguing that the balances claimed are inflated. First, Vey attempts to call into question the sufficiency and reliability of Compass's computer records, which relied on records transferred from SNB. However, Vey failed to offer any evidence that Compass's or SNB's computer records were actually flawed. Accordingly, the Court credits the evidence adduced by Compass through Mike Lewis, a Senior Vice-President in Compass's Asset Recovery and Management Solutions Department, who testified as to the amounts due on each promissory note. Therefore, the Court concludes, by a preponderance of the evidence, that Compass proved the amounts due with sufficient accuracy.

---

[14] Prior to trial, the Court applied the principles of issue preclusion, which prevented "Vey from relitigating the Court's prior determinations that: (1) Compass is the successor in interest to State National Bank; (2) Compass performed under the terms of the promissory notes that are contested in this case; and (3) that Vey defaulted under the terms of those promissory notes." Order Applying Collateral Estoppel, Mar. 26, 2012, ECF No. 187. Moreover, at trial, Vey conceded that the promissory notes exist and the Veytias signed the notes in their capacities as the principals of Vey.

Second, Vey argues that Compass has inflated the loan balances because loans that Compass should have credited as having been paid continued to accrue interest, resulting in excess interest added to the loan balances. However, Vey failed to offer admissible evidence purporting to calculate the amount by which its loan balances are allegedly inflated resulting from the excess interest charged.[15] Vey merely offered Dunbar's testimony that Compass's balance calculations contain approximately $200,000 of excess fees and expenses, potentially including overpaid interest. After reviewing Dunbar's testimony and the admissible portions of his report, the Court concludes that his estimate is not firmly grounded in quantifiable data—it is merely a "guess-timate," and not one upon which the Court has a sufficient explanation or basis upon which to rely. Accordingly, even if the Court were to accept Vey's theory, the Court has no basis upon which to reduce the loan balances that Compass provided. Therefore, the amount, if any, of excess loan balance that can be attributable to Compass is purely speculative and the Court declines to engage in such conjecture.

Third, Vey seeks to reduce its indebtedness by the amount of the transfers it alleges that it did not authorize and by the amount Vey contends Peterson misapplied. As previously stated, the Court finds insufficient evidence to convince it that any of the contested transfers were actually unauthorized by Vey. In addition, even if Peterson misapplied funds, Vey was ultimately the beneficiary of such funds so that Vey is not entitled to a reduction of that amount.

Lastly, Vey seeks to reduce the Consolidated Loan balance by the amount of loans that it contends were paid in full but which were, nonetheless, included in the Consolidated Loan

---

[15] Vey sought to introduce such evidence through Dunbar's testimony and revised expert report. However, the Court limited Dunbar's testimony to the opinions he expressed in his original expert report and which Vey disclosed in a timely manner. Text Order, Mar. 26, 2012 (granting Compass's Mot. to Exclude Undisclosed Expert Testimony and Trial Brief in Support, filed Mar. 12, 2012, ECF No. 130).

balance.[16] Vey failed to clearly articulate a legal theory for such a remedy. Instead, the Court understands Vey to appeal to the equitable powers of the Court to reduce the damages. The Court finds no basis for such relief given that Vey was represented by legal counsel and assisted by an expert accountant at the time that it signed the Consolidated Loan, that Vey subsequently received a modification of the Consolidation Loan, and that Vey used the Eckols property and other properties to collateralize the Consolidated Loan.[17] These three separate transactions evince that Vey was aware of the inclusion of the Eckols debt and other debts in the Consolidated Loan. The Court sees no reason to modify the resulting agreements and reduce the debt.

In sum, Compass proved each element of its claim for breach of the promissory notes by a preponderance of the evidence, including the amount of debt due on each loan.

### 2. Unjust Enrichment

Compass brought its claim for unjust enrichment as an alternative and contingent theory of liability should Vey have successfully challenged the validity of any of the promissory notes. Third Am. Compl. ¶ 92. Given the Court's determination that Compass is entitled to recover pursuant to the promissory notes, Compass's unjust enrichment claim is not relevant.

### 3. Attorneys' Fees

Under Texas law, contracts between the parties requiring payment of attorney's fees are enforceable. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat. Dev. & Research Corp.*, 299

---

[16] Notably, Vey has acknowledged the validity of the Consolidated Loan, and merely disputes the amount due. Def.'s Proposed Findings of Fact & Conclusions of Law ¶ 24, ECF No. 197.

[17] To the extent that Vey seeks a reduction based on properties other than the Eckols Loan, the Court's conclusion is the same; Vey agreed to include each of the smaller loans comprising the Consolidated Loan and to provide additional collateral at a time when Vey was represented by counsel and by an expert accountant. Vey is not now entitled to a reduction of the Consolidated Loan balance.

S.W.3d 106, 120 (Tex. 2009). The promissory notes at issue provide that Vey is liable for Compass's attorneys' fees. The Court will reserve determination of the amount of fees it will award until the parties have had an opportunity to brief the matter.

### B.  Vey's Affirmative Defenses

In its Answer and Counterclaim, Vey asserts fifteen[18] "affirmative defenses."[19] Vey did not pursue each of these affirmative defenses at trial and it is unclear exactly which defenses Vey believes are properly before the Court. As to those affirmative defenses that Vey has not waived through its failure to pursue them at trial, the Court Concludes that Vey failed to carry its burden on each affirmative defense.[20]

### C.  Vey's Counterclaims

In its Answer and Counterclaims, Vey purports to bring ten separate counterclaims. In full, the list includes counterclaims for: (1) declaratory judgment; (2) determination of validity, extent, and priority of liens; (3) recovery of fraudulent transfers pursuant to the Texas Uniform Fraudulent Transfer Act; (4) equitable subordination; (5) breach of contract; (6) fraud; (7) quantum meruit, promissory estoppel, and equitable estoppel; (8) respondeat superior; (9) ratification; and (10) negligent supervision and retention.[21] Answer and Countercls. ¶¶ 119-66.

---

[18] The Court struck Vey's affirmative defense of discharge in bankruptcy prior to trial.

[19] Answer & Countercls. ¶ 102, Dec. 29, 2011, ECF No. 106 (including, "estoppel, fraud, unclean hands, failure of consideration, lack of consideration, breach of contract, unconscionability, duress, payment offset, accord and satisfaction, express contract, waiver, discharge in bankruptcy, mistake, and failure to mitigate").

[20] The defenses actually presented by Vey were defenses aimed at reducing its indebtedness by challenging Compass's damages calculations or seeking an equitable reduction in damages; the defenses were not seeking to void liability. Accordingly, the Court's discussion in section II.A.1 addresses the defenses Vey actually presented; the Court's discussion of Vey's counterclaims, II.C, addresses several issues related to the affirmative defenses Vey asserted in its pleadings.

[21] Several of these are not actually causes of action at all, including, for example, claims for "respondeat superior" and "ratification," both of which are theories of vicarious liability.

Shortly before closing arguments, Vey asserted that it still intended to pursue all of these counterclaims and believed there was evidence in the record to support such counterclaims. Despite such an assertion, the only counterclaim specifically addressed by Vey in its closing argument and in its Proposed Findings of Fact and Conclusions of Law is its claim for equitable subordination. Vey fails to assert that it should recover for breach of contract, fraud, or any of its other counterclaims. *Id.* In fact, Vey's counterclaims merit very little discussion by the Court, not only because Vey failed to press these claims, but also because Vey failed to offer any evidence on most of its claims at trial. Moreover, as to all of its counterclaims, the Court concludes that Vey failed to offer sufficient evidence to carry its burden.

### Count 1: Declaratory Judgment

The Court denies Vey's counterclaim seeking declaratory judgment because Vey has failed to offer evidence that it merits such relief and because declaratory judgment is inappropriate in this case. "The purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty." *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949); *See also Venator Group Specialty, Inc. v. Matthew/Muniot*, 322 F.3d 835, 840 (5th Cir. 2003) ("The Declaratory Judgement Act offers the court an opportunity to afford a plaintiff equitable relief when legal relief is not yet available to him, so as to avoid inequities which might result from a delay in assessing the parties' legal obligation."). In short, the controversies between the parties have already come to full fruition—the violations and breaches asserted by Vey have long since passed. Moreover, much of the declaratory relief Vey seeks is properly the province of the bankruptcy court, which still maintains jurisdiction over the non-adversary proceedings.[22]

---

[22] For example, Vey seeks a declaratory judgment as to the extent and validity of various liens.

Accordingly, the Court concludes that Vey's counterclaim seeking declaratory judgment is inapplicable to this case and should be dismissed. *See Wilton v. Seven Falls Co.*, 515 U.S. 289, 288 (1995) (holding that the Declaratory Judgment Act is a "remedial arrow," that authorizes a district court, "in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close").

### Counts 2 and 4:  Determination of Validity, Extent, and Priority of Liens of Compass Bank; Equitable Subordination

Similarly, although styled as counterclaims, counts two and four do not fall outside the province of the bankruptcy court. The Supreme Court recently held that "bankruptcy courts lack constitutional authority to enter final judgment [on a counterclaim] when the counterclaim did not 'stem[] from the bankruptcy itself or would necessarily be resolved in the claims allowance process.'" *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 406 (5th Cir. 2012) (quoting *Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011) and summarizing the holding). As with the issues raised in Vey's counterclaim for Declaratory Relief, counts two and four are also properly the province of the bankruptcy court because they *do* stem from the bankruptcy itself and will be resolved in that process.[23] Accordingly, the Court declines to address such issues, reserving them for consideration in the remaining bankruptcy action.

### Count 3:  Texas Uniform Fraudulent Transfer Act

The Texas Uniform Fraudulent Transfer Act (TUFTA), TEX. BUS. & COM. CODE ANN. § 24.001 (West 2009), "was designed to prevent a debtor from defrauding its creditors by moving assets out of reach." *Wohlstein v. Aliezer*, 321 S.W.3d 765, 776 (Tex. App.—Houston [14th Dist.] 2010, no pet.) The TUFTA contemplates multiple theories of recovery. To prevail under

---

[23] The Court notes that equitable subordination is a remedy derived from the bankruptcy code at 11 U.S.C. § 510(c) (2006). *In re SI Restructuring, Inc.*, 532 F.3d 355, 360 (5th Cir. 2008).

section 24.006, Vey must prove that it, the debtor, was insolvent or became insolvent as a result of the transfer. § 24.006. For Vey to prevail pursuant to section 24.005, it must prove that it, as the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

§ 24.005. Vey offered no evidence of the cause of Vey's entry into bankruptcy and so failed to carry its burden under § 24.006. Similarly, Vey failed to offer evidence of any prospective business transactions by Vey, the relative strength of Vey's assets, or Vey's ability to pay future debts. Therefore, Vey has also failed to carry its burden under § 24.005.

### Count 5: Breach of Contract

Vey's breach of contract claim is based on Compass's alleged breach of "deposit and credit agreements" between the parties. Answer & Countercls. ¶ 140. However, Vey failed to introduce the agreements or terms of those agreements upon which the claim is based into evidence. Accordingly, the Court has no basis from which to assess an alleged breach. Therefore, Vey has failed to carry its burden on its breach of contract counterclaim.

### Count 6: Fraud

Vey's fraud claim is specific to the Consolidated Loan. Vey asserts that Compass falsely represented the balances due on the numerous smaller loans that were combined to create the Consolidated Loan. Def.'s Answer & Countercls. ¶¶ 144-46. Vey failed to prove its fraud counterclaim for a number of reasons. Most obviously, Vey failed to carry its burden of showing that Compass knew or recklessly made any

misrepresentations as to the value of the smaller loans at the time Vey entered into the Consolidated Loan. Further, the Court finds that Vey did not justifiably rely on the loan balances provided by Compass given that: (a) Vey was on notice of what it considers to be loan balance errors attributable to Compass well before the Consolidated Loan was formed; (b) that the Veytias are experienced in business and finance; and (c) that they were represented by legal counsel and an accounting expert at the time. *See Lewis v. Bank of America NA*, 343 F.3d 540, 546-47 (5th Cir. 2003) (applying similar factors and noting that, where a person had notice that reliance may be unwarranted and fails to make an examination or investigation of the representations relied upon, reliance is unjustified). Accordingly, the Court determines that Vey has failed to prove its fraud counterclaim.

### Count 7: Quantum Meruit, Promissory Estoppel, and Equitable Estoppel

Vey brings these claims by asserting that "[t]o the extent that Compass . . . has benefitted from Peterson's unauthorized draws on [its] lines of credit, unapplied payments, and unauthorized transfers," Compass should reimburse Vey. Answer & Countercls ¶ 150. However, the Court has concluded that Vey has failed to prove by a preponderance of the evidence that any transfers were unauthorized. Further, Vey has failed to prove an amount of benefit that Compass received over and above what Compass should have received under the loan agreements. Accordingly, the Court concludes that Vey has not shown that it is entitled to any damages and that it has failed to meet its burden of proof.

### Counts 8, 9, and 10: Respondeat Superior, Ratification, and Negligent Supervision and Retention

The Court construes counts eight and nine as theories of liability pertaining to Vey's efforts to hold Compass liable for Peterson's negligence. Vey's respondeat superior theory fails

because Compass cannot be held liable for Peterson's criminal activity, which was unforeseeable and well outside the scope of his duties. *Milan v. Dean Witter Reynolds, Inc.*, 90 S.W.3d 760, 768-69 (Tex. App.—San Antonio 2002, pet. denied) ("In cases involving serious criminal activity, an employer is not liable for intentional and malicious acts that are unforeseeable considering the employee's duties."). Vey's ratification theory fails because Vey has failed to prove that any of the transactions were actually unauthorized and attributable to Peterson. Vey's negligent supervision and retention claim fails because Vey has not offered any evidence regarding Peterson's supervisors, what role they could or should have played, or as to the appropriate standard of care.[24] All Vey has shown is that Peterson worked on Vey's accounts, Compass fired Peterson, and that Peterson was subsequently convicted of bank fraud. Moreover, Vey has failed to prove any losses attributable to Peterson (much less to Compass), so it has failed to prove damages and proximate cause—elements essential to a negligence claim. *See Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (discussing the general elements for negligence); *Zarzana v. Ashley*, 218 S.W.3d 152, 158 (Tex. App.—Houston [14th Dist.] 2007, pet struck) (using the same elements when analyzing a negligent supervision claim). For the foregoing reasons, Vey has failed to carry its burden of proof on each of its theories of negligence.

---

[24] In its pre-trial motions, Compass argued that Vey's negligent supervision claim should fail because Vey was unable to present expert testimony on the proper standard of care, and such expert testimony was essential given the financial and banking issues raised in this case. Mot. to Exclude Evidence on the Standard of Care for Bank Emps. and Trial Br. in Support, March 12, 2012, ECF No. 134. The Court carried the Motion through trial. The Court now concludes that the Motion is moot because Vey is not entitled to recover under any standard of care; regardless of the nature of the duty Compass owed to Vey, Vey has failed to prove damages and causation.

### III. SUMMARY

Compass carried its burden as to each element of its claim for breach of the promissory notes at issue in this case and is entitled to a judgment against Vey for $8,567,309.05. Therefore, Compass's claim for unjust enrichment is inapplicable. As well, Compass is entitled to collect attorneys' fees from Vey in an amount to be determined through further briefing.

Vey failed to impugn Compass's debt calculations and failed to carry its burden as to any of its numerous affirmative defenses and counterclaims. As a result, Vey is not entitled to relief.

Accordingly, **IT IS ORDERED** that all of Defendant Vey Finance, LLC's counterclaims are dismissed with prejudice, except its claims for equitable subordination and determination of the validity, extent, and priority of liens, which are dismissed without prejudice so that the bankruptcy court may consider those issues.

**IT IS FURTHER ORDERED** that, upon entry of final judgment, the Clerk of the Court shall disburse the funds placed in the Registry of the Court in connection with this case, a total of $251,993.38, to Plaintiff Compass Bank. The Court will enter final judgment in Compass's favor in a separate document, pursuant to Federal Rule of Civil Procedure 58.

SIGNED this 30 day of **May, 2012**.

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE