IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| COMPASS BANK, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | EP-11-CV-359-PRM |
| | § | |
| VEY FINANCE, LLC, | § | |
|     Defendant. | § | |

**ORDER AWARDING ATTORNEYS' FEES & COSTS**

On this day, the Court considered Compass Bank's (Compass) "Motion for Attorney's Fees" (ECF No. 203) [hereinafter Motion], filed on May 23, 2012 in the above-captioned cause.[1] After due consideration, the Court is of the opinion that the Motion should be granted for the reasons that follow.

**I.      FACTUAL AND PROCEDURAL BACKGROUND[2]**

On May 30, 2012, the Court concluded that Vey Finance, LLC (Vey) breached certain promissory notes and awarded $8,567,309.05 to Compass. Findings of Fact & Conclusions of Law [hereinafter Findings], ECF No. 204. The Court also dismissed all of Vey's counterclaims. *Id.* The sole remaining issue between the parties in this case is the Court's determination of the amount of attorneys' fees to which Compass is entitled.

---

[1] Further, the Court takes judicial notice of the full record in this case and each of the related cases. The related cases are *Compass Bank v. Vey Finance, LLC*, EP:10-CV-137 (stayed following Vey Finance, LLC's (Vey) entry into bankruptcy); *Compass Bank v. Veytia*, EP:11-CV-228 (granting summary judgment in favor Compass against the principals of Vey, who signed promissory notes guaranteeing Vey's debts); and *In Re: Vey Finance, LLC*, 11-MC-359 (withdrawing the referral to bankruptcy court regarding the adversary claims between Compass and Vey and subsequently converted into the above-captioned cause).

[2] Compass initiated suit against Vey on April 12, 2010. Original Compl., ECF No. 1. Since that time, the Court has entered numerous orders in this case and the related cases, providing extensive background information and detailing the litigation. For a more comprehensive summary, see Findings, ECF No. 204 and *Compass Bank v. Veytia*, EP:11-CV-228, ECF No. 190, 2011 WL 6130900 (W.D. Tex. Dec. 8, 2011).

II.   **LEGAL STANDARD**

In Texas,[3] when a party recovers for breach of a contract, such as a guaranty agreement,[4] "an award of reasonable fees is mandatory, as long as there is proof of reasonable fees." *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002). However, "[t]he amount of reasonable fees . . . is discretionary." *Fluorine on Call, Ltd., v. Flourogas Ltd.*, 380 F.3d 849, 866 (5th Cir. 2004) (applying Texas law).

"The determination of a fees award is a two-step process." *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010) (citation omitted). First, a district court must determine the "lodestar." *Id.*; *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2002) (applying Texas law). The Court must then determine whether to deviate from the lodestar amount and should consider the eight "*Arthur Andersen* factors."[5] *Fluorine*, 380 F.3d at 867 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). In making its determination, the Court "may take judicial notice of reasonable and customary fees, along with the case file." *Id.* at 866-67. Finally, "[a]s a general rule, the party seeking to recover

---

[3] The Court bases its jurisdiction in this case on diversity of the parties and Compass prevailed on its breach of guaranty claims pursuant to Texas law. Findings 8. Consequently, Texas law governs the award of attorneys' fees in the present case. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002) (holding that "[s]tate law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision").

[4] In Texas law, guaranty agreements are treated "just like any other contract." *Mid-South Telecomms. Co. v. Best*, 184 S.W.3d 386, 390-91 (Tex. App.—Austin 2006, no pet.).

[5] In *Arthur Andersen*, the Texas Supreme Court adopted the factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Northwinds Abatement, Inc. v. Empl'rs Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001). In fact, even when applying state law, courts in the Fifth Circuit may look to federal law for guidance as to the lodestar calculation and the application of the factors justifying adjustment to the lodestar. *See, e.g., id.* (discussing recovery of attorney's fees under the Texas Insurance Code, but drawing guidance from *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998) (discussing the recovery of fees pursuant to Federal Rule of Civil Procedure 54) and quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (analyzing the recovery of attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. 1988)).

attorneys' fees carries the burden of proof." *Stewart Title Guar. Co., v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

### III. ANALYSIS

The Court initially notes that Vey has not filed a response to Compass's Motion, offered any objections, or provided an alternative calculation to the attorneys' fees and costs award that Compass seeks. By contrast, Compass offers two alternative calculations for its attorneys' fees, one based on the lodestar procedure described above, and the other on a contractual based method. Mot. 10-11. The Court rejects Compass's contractually based method because Texas law requires the award of *reasonable* attorneys' fees and the proposed contractual method leads to an ureasonable result.[6] Conversely, the lodestar method is appropriate in this case because it is consistent with Texas law and leads to an award that is reasonable.

#### A.   The Lodestar

The lodestar is comprised of "the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010).

---

[6] In its contractually based method, Compass looks to the rate set for attorneys' fees specified in various promissory notes at issue in this case and concludes that it is entitled to $1,029,025.82. Mot. 13. The Court has previously considered this method of calculating fees in the related case of *Compass Bank v. Veytia*, EP:11-CV-228, ECF No. 205, 2012 WL 627756 (W.D. Tex. Feb. 24, 2012), and the Court rejected this method. There, as here, Compass seeks to recover 15% of the value of two of the ten loans at issue in this case, plus a sum equal to the prorated amount of its actual expenditures on attorneys' fees for the remaining eight loans. Mot. 10-13. The result of this method is a sum that is over six-times greater than Compass's lodestar calculation, which is based on the sum actually billed by Compass's attorneys. Under Texas law, a prevailing party in a contract dispute is entitled to collect *reasonable* attorneys' fees. *Mathis*, 302 F.3d at 462. The Court concludes that Compass's request for fees that are 600% greater than the fees actually billed by its attorneys during the relevant time is unreasonable.

3

### 1.    Number of Hours

Initially, the Court looks to the amount of hours that Compass claims to have reasonably expended. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (beginning its analysis with the claimant's billing records). Under Texas law, "if any attorneys' fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006); *see also Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (holding that a party need not segregate fees for defending certain counterclaims). Such unrecoverable fees include some types of paralegal work because "[p]aralegal work can only be recovered as attorneys' fees if the work is legal rather than clerical." *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (applying Texas law). Similarly, "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented." *Jimenez*, 621 F.3d at 379-80 (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

Compass's calculation of the hours reasonably expended by its attorneys complies with Texas law requiring certain fees to be excluded and leads to the reasonable total of 962.35 hours.[7] Compass has limited its request to fees incurred prior to Vey's entry into bankruptcy protection, and it has segregated its fees to exclude those fees that are unrecoverable under Texas law. Mot. 3-4. Additionally, Compass provided the Court and Vey with detailed billing records that contain itemized descriptions of each hour billed. Mot. Ex. D. Because some of the entries in the billing records are redacted to protect privileged material, Compass provided the Court

---

[7] Compass actually contends that the total is 962.36, however the Court's own calculation, based on adding the monthly totals listed in the summary chart, results in a total of 962.35. Mot. Ex. A-1.

with an unredacted copy of the billing records for the Court's in camera review.[8] After reviewing both billing records and given Vey's lack of objection, the Court concludes that the total hours claimed by Compass, 962.35, is a reasonable sum and is adequately documented, without unnecessarily duplicative hours included in the total.

### 2. Hourly Rates

"Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000) (quotations and citation omitted). However, "the attorneys' fees calculus is a fact-intensive one and its character varies from case to case." *Id.* at 281.

Compass argues that its attorneys, primarily based in Austin and San Antonio, billed at reasonable rates for the type of work done in this case. Mot. 5. Partners at those firms billed at rates ranging from $200-$465.[9] Vey failed to challenge these rates.

The Court concludes that rates of $325 for partners, $225 for associates, and $110 for paralegals appropriately reflect the market rates in the legal community for the type of litigation and the skills of the attorneys involved in this litigation. Notably, these rates are within the range requested by Compass. Moreover, this litigation required the attorneys for Compass to be familiar with complications resulting from Vey's entry into bankruptcy during the litigation, Vey's numerous counterclaims and defenses, and with complicated banking and business practices. Compass hired experienced attorneys who were well qualified for this type of

---

[8] Mot. 3 n.2.

[9] Specifically, at the Harbour Law Firm, P.C., located in El Paso, Texas, the partner billed $200 hourly. Mot. 5. At the law firms of Reid Davis and The Davis Group, whose attorneys in this matter were based in Austin and San Antonio, the hourly rates in this case are: $375 for senior partners, $305 or $300 for junior partners, $225 for associates, and $110 for paralegals. *Id.* For the firm of Jackson Walker, L.L.P., whose attorneys in this case were based in San Antonio and Austin, the hourly rates in this case are: $455-465 for partners, $330 for associates, and $150-$165 for paralegals. *Id.*

litigation and who achieved favorable results. Yet, the high-end of rates for partners requested by Compass exceeds the market requirements. The rate of $325 hourly for partners more closely reflects market rates for the type of litigation at issue in this case and still reflects the high level of experience and qualifications of Compass's counsel.

### 3. The Lodestar Calculation

In the final step of the lodestar calculation, the Court multiplies the reasonable hourly rate by the number of hours reasonably expended. *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010). After reviewing the summary chart provided by Compass, the Court determines that, of the total of 962.35 hours, partners accounted for 452.06 hours (including senior partners), associates for 374 hours, and paralegals for 136.29 hours. *See* Mot. Ex. A-1. Therefore, the Court multiplies 452.06 hours by the rate of $325 for partners; 374 hours by the rate of $225 for associates; and 136.29 hours by the rate of $110 for paralegals. The result is a total of $246,061.40 for the lodestar.

### 4. Adjustment to the Lodestar

#### a. *Arthur Andersen* Factors

Once a Court has calculated the lodestar, it may adjust the award after considering the *Arthur Andersen* factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

6

*Fluorine on Call, Ltd., v. Flourogas Ltd.*, 380 F.3d 849, 866 (5th Cir. 2004) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). "A litigant is not required to present evidence on each of these factors." *In re Estate of Vrana*, 335 S.W.3d 322, 329-30 (Tex. App.—San Antonio 2010, pet. denied). "[T]he most critical factor in determining an award of attorneys' fees is the degree of success obtained by the victorious plaintiffs." *Northwinds Abatement, Inc. v. Empl'rs. Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001) (internal quotations and citations omitted).

### b. No Adjustment to the Lodestar Is Warranted

The Court determines that the circumstances of this case do not warrant an adjustment to the lodestar. The lodestar "is presumptively reasonable and should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). While this case presented complicated issues, it is not "exceptional," particularly because the Court accounted for the unusual circumstances and difficulties of this case in the lodestar calculation. *See Jason D.W. v. Houston Indep. School Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (discussing the *Johnson* factors and noting that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted"). For example, factors (1), (2), (4), and (5) are reflected in the hours actually billed by Compass's attorneys. Factors (3), (4), (6), and (7) are reflected in the Court's calculation of the appropriate hourly rates in this case. Specifically, the rates exceed those that are typical in El Paso, but are appropriate because the rates reflect Compass's state-wide presence, its ongoing relationship with its chosen counsel, and the high levels of experience and skill of its attorneys, who achieved a favorable result in this case.

### B.     Costs

The Court will award Compass a total of $28,344.67 in recoverable costs associated with this litigation. Under Texas law, "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." Tex. R. Civ. P. 131; *See also Ferry v. Sackett*, 204 S.W.3d 911, 912 (Tex. App.—Dallas, 2006) (no pet.). The terms of the promissory notes at issue also provide for the recovery of costs and certain expenses. *See, e.g.*, Mot. Ex. E ¶ 9 (providing a copy of the promissory note for the "Consolidated Loan" and requiring Vey to "pay all reasonable attorney's fees, court costs, and other reasonable expenses"). As with the other calculations provided to the Court, Compass's accounting of its costs excludes expenses incurred after Vey's entry into bankruptcy and other costs that must be excluded under the law. Mot. 4. Compass has provided detailed billing records, which include itemized entries describing the costs incurred, including court filing fees and expenses for photocopies. *See, e.g.*, Mot. Ex. D at 11. Moreover, Vey does not dispute any part of Compass's calculations. Accordingly, the Court finds that it is appropriate to award Compass the full amount of costs it seeks.

### C.     Adjustment for Fees Previously Applied to Loan Balances

Compass explains that it has previously applied $128,902.23 in attorneys' fees and costs to certain loan balances that are already reflected in the Court's award of damages in the Court's award based on the promissory notes. Mot. 10. Accordingly, Compass stipulates that the Court's final award of attorneys' fees and costs should be reduced to avoid double recovery. *Id.* The Court agrees, and will reduce the overall reward by $128,902.23.

IV.  CONCLUSION

Using the lodestar method, the Court calculates that Compass is entitled to $246,061.40 in attorneys' fees. Further, Compass is entitled to recover $28,344.67 in costs. The Court will reduce Compass's total award by $128,902.23 because that sum reflects both fees and costs that have already been added to Vey's debt to Compass. Therefore, the total award of attorney's fees and costs in this case is $145,503.84.

Accordingly, **IT IS ORDERED** that Compass Bank's "Motion for Attorney's Fees" (ECF No. 203) is **GRANTED** in part.

**IT IS FURTHER ORDERED** that Compass Bank shall have and recover $145,503.84 in attorneys' fees and costs, plus post-judgment interest at the applicable statutory rates or as allowed under the law.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

FINALLY, **IT IS ORDERED** that the Clerk of the Court shall **CLOSE** this case.

SIGNED this 25 day of **June, 2012**.

PHILIP R. MARTINEZ
UNITED STATES